[S. F. No. 16620. In Bank.—Oct. 20, 1941.]

FRANK R. HATFIELD et al., Respondents, v. LEVY BROTHERS (a Corporation) et al., Appellants.

Edmund Scott and Myrick & Deering and Scott for Appellants.

Francis N. Foley for Respondents.

CARTER, J.—Plaintiffs, husband and wife, commenced this action against defendants for damages for injuries sustained by plaintiff, Pearl Hatfield, from a fall in defendants' mercantile store, alleged to have been caused by the negligent maintenance of the floor. Defendants denied that they were negligent and pleaded the defense of contributory negligence. A jury trial was had resulting in a verdict for plaintiffs of $10,000, and defendants appeal from the judgment entered thereon. All four defendants made a motion for a new trial. The motion was denied as to all except defendant Maebel Morris; as to her it was granted on the ground of insufficiency of the evidence one day after all of the defendants had perfected their appeal from the judgment.

Plaintiffs allege and defendants did not deny that all of the defendants owned, controlled and maintained the mercantile store in San Mateo, in which the accident occurred, although it appears from the evidence that defendants Bromfield, Morris and Scott were employees of defendant Levy Brothers, a corporation.

Inasmuch as one of defendants' contentions on this appeal is that the evidence is insufficient to support the verdict, we will first direct our attention to the facts. On March 15, 1939, between 4:30 and 5 o'clock in the afternoon, plaintiff Pearl Hatfield, who was six or seven months pregnant,

was a customer in said store; she was therefore on the premises as an invitee. She had visited the dry goods department of the store to exchange an article of merchandise. She then left that department, went to another part of the store, and purchased refreshment at a soda fountain counter. She left that counter to cross that part of the store and pay for her purchase at the cashier's desk. While so walking across, and after taking four or five steps, she slipped and fell; as stated in her language: "Why, I slipped on some wax on the floor, and . . . I really fell." The fall occurred when she put her right foot down for a forward step, her right foot skidding forward and left foot backward. As a result of the fall she sustained severe and serious injuries. At the point where she fell there was a skid mark from her shoe. The floor of the store is a hardwood floor with boards of varying width and running lengthwise. Where the boards join laterally there are "V" shaped grooves about 3/16 inches wide at the top and 9/16 inches deep. There is an incline of 4¾ inches change in 28 feet back from the street entrance door. The floor, where the accident occurred, had been waxed by defendant Scott, an employee of Levy Brothers, the morning of the day of the accident with an electrically powered waxing machine which melted the wax, spread it, and polished the floor, all in one operation; it was manually propelled over the surface. The operator of the machine had control of the amount of wax deposited on the floor, and if an excessive quantity were deposited thereon the machine would spread rather than remove it; an excessive amount of wax would make the floor slippery. The evidence shows that a waxed floor is ordinarily not slippery unless an excess quantity of wax is applied which does not occur unless the one applying the wax is "very careless." Defendants' witness Adams testified on direct examination: "Q. As far as causing a slippery surface, Mr. Adams, is a wax applied hot like this with a cornuba base and a machine that revolves as fast as this machine does, would it leave a slippery surface? A. *No, it does not ordinarily. Ordinarily the cause of slipperiness* is what they call 'piled up,' *too much wax on the surface* in the application of the machine, but unless the operator is *very careless* it is almost impossible to get it piled up, and get too much and be slippery." The floor was "extremely slippery" as evidenced by the testimony of one of plaintiff's witnesses who

slipped and nearly fell on the day of the accident. That witness, Mrs. Robe, testified that she arrived at the store some time between 10 o'clock in the morning and noon the day of the accident and slipped after taking a few steps from the street entrance into the food and restaurant department of the store which was near the place where plaintiff, Pearl Hatfield, thereafter fell, and that the floor was being waxed when she was there. Defendant Scott testified that he commenced waxing the floor at 8:00 a. m. and started at the street entrance door where Mrs. Robe entered; that it usually took about 1½ hours to do the waxing. It may be inferred therefore that he had waxed the portion of the floor where Mrs. Robe slipped near the entrance door as she did not arrive until after 10 a. m. and the waxing was commenced by Scott at 8 a. m. at the entrance door. There were spots on Mrs. Hatfield's top coat which she was wearing at the time of the fall which "had some floor marks that looked like wax, a greasy substance." Defendant Scott who applied the wax admitted that the floor was slippery where the wax had been applied that morning. He testified: "Q. No. Just answer my question now. There isn't any question at all after you got through waxing the floor *that morning,* that wherever you applied wax and polished it with the buffer, it was slippery, wasn't it? A. Yes." He testified to the contrary in other portions of his testimony, but that would do nothing more than create a conflict in the evidence which has been resolved against defendants by the jury. Defendant Bromfield, the president and manager of defendant, Levy Brothers, testified at the taking of his deposition prior to trial (it was read at the trial) that he issued orders after the accident "that the floor not be waxed," and that other people had slipped on the floor prior to the accident. He qualified that by a correction of his deposition to the effect that a number of women had fallen in both of defendants' stores from time to time with the floor both waxed and not waxed.

On the score of sufficiency of the evidence establishing defendants' negligence we cannot say as a matter of law that plaintiffs failed to prove that issue. The facts as hereinabove recited manifestly established sufficient facts to require submission of the issue of negligence to the jury. Defendants produced evidence to the effect that there was no excess wax on the floor; that the floor was not slippery; that

the best quality of wax was used; that the wax application machine was efficient and of a kind commonly used; that the floors were of a kind commonly used and that waxing is a common and customary treatment for hardwood floors. This evidence merely creates a conflict. The duty of resolving that conflict rested with the jury, and it is beyond the power of this court to disturb a verdict based upon conflicting evidence. The jury may well have inferred from the evidence establishing the facts above recited that the floor would not ordinarily be slippery from waxing unless an excess quantity of wax was applied, which does not occur unless the operator is "very careless"; that such fact taken with the facts that the wax was applied just prior to the accident, that the amount of wax applied was controlled by the one operating the application machine, that the floor was very slippery after the application, that plaintiff, Pearl Hatfield, did slip and fall, and that there was wax on her coat, would amply justify the inference that there was negligence in applying an excess quantity of wax which was the proximate cause of the injury. That inference is fortified when we consider that the evidence shows that Pearl Hatfield was wearing low-heeled shoes and, at the time she fell, was walking carefully and deliberately; that she testified she slipped on wax on the floor and there were spots on her coat that had the appearance of wax.

In cases of this character negligence may be established by circumstantial evidence which is nothing more than one or more inferences which may be said to arise reasonably from a series of proven facts. (*Morton* v. *Manhattan Lunch Co.*, 41 Cal. App. (2d) 70 [106 Pac. (2d) 212]; *Lamb* v. *Purity Stores, Inc.*, 119 Cal. App. 690 [7 Pac. (2d) 197]; *Brown* v. *Holzwasser, Inc.*, 108 Cal. App. 483 [291 Pac. 661]; *Rothschild* v. *Fourth & Market St. R. Co.*, 139 Cal. App. 625 [34 Pac. (2d) 734].)

Defendants cite numerous authorities from other jurisdictions which in the main are to the effect that the maintenance of polished waxed floors standing alone, although they are slippery, is not in itself negligence. There apparently is a conflict of authority on that subject, and from what facts an inference of negligence flows. (See cases collected: 33 A. L. R. 181; 43 A. L. R. 866; 46 A. L. R. 1111; 58 A. L. R. 136; 100 A. L. R. 710.) We are not bound by what the rule

may or may not be elsewhere. However, in any event, it is not necessary in the instant case to determine which view of that proposition is most consonant with justice because there are, as we have seen, sufficient facts proven here from which it may be inferred that defendants were negligent in applying an excessive quantity of wax to the floor.

■ Defendants urge that there is not sufficient evidence to establish that defendants had notice, actual or constructive, of the dangerous condition of the floor and that therefore the judgment must be reversed. There are several reasons why that contention cannot prevail. There is evidence heretofore referred to by defendant Scott, the employee who spread the wax on the floor, that after it was applied on the morning of the accident, the floor was slippery. He thus knew it was slippery and therefore dangerous; his negligence had brought about that condition. Where the dangerous or defective condition of the property which causes the injury has been created by reason of the negligence of the owner of the property or his employee acting within the scope of the employment, the owner of the property cannot be permitted to assert that he had no notice or knowledge of the defective or dangerous condition in an action by an invitee for injuries suffered by reason of the dangerous condition. Under such circumstances knowledge thereof is imputed to him. (*Saunders* v. *A. M. Williams & Co.*, 155 Ore. 1 [62 Pac. (2d) 260].) ■ Where the dangerous condition is brought about by natural wear and tear, or third persons, or acts of God or by other causes which are not due to the negligence of the owner, or his employees, then to impose liability the owner must have either actual or constructive knowledge of the dangerous condition or have been able by the exercise of ordinary care to discover the condition, which if known to him, he should realize as involving an unreasonable risk to invitees on his premises. His negligence in such cases is founded upon his failure to exercise ordinary care in remedying the defect after he has discovered it or as a man of ordinary prudence should have discovered it.

■ In any event there is other evidence here from which the jury may have reasonably concluded that defendants had knowledge of the slippery condition of the floor. As we have seen, witness, Mrs. Robe, testified that the floor was slippery and that during the morning of the day on which the acci-

dent occurred, she slipped on the floor in approximately the same area where Mrs. Hatfield thereafter fell. Although it does not appear that anyone in authority had actual knowledge of that occurrence, testimony as to conditions previous to the accident by persons who had also slipped on the same floor is evidence tending to show knowledge on the part of the owner of the store of the dangerous condition. Further, the question of whether the condition which caused the injury had existed so long as to be discoverable by the store owner within a reasonable time is for the jury. (*Rothschild* v. *Fourth & Market St. R. Co., supra.*)

Defendants claim separately as to the individual defendants Bromfield, Scott, and Morris, that the evidence is not sufficient to support the verdict as to any of them. The evidence shows that Scott, who was the employee of Levy Brothers, a corporation, applied the wax, and that he was negligent, therefore the objection as to him is manifestly without merit. From the evidence it appears that Bromfield was the manager of the store and Morris' duties were at the cashier's desk; Morris was not on duty when the accident occurred. However, it was alleged by plaintiffs in their complaint that *all* of the defendants "owned, operated, maintained and controlled" the store in which the accident occurred. That allegation was admitted by defendants by their failure to deny it. Therefore, it must be assumed that they were jointly in control of the store and accordingly jointly liable for any negligence in failing to maintain the premises in a safe condition.

However, as to defendant Morris, as we have seen, a motion for a new trial was granted on the ground of insufficiency of the evidence the day following the perfection of this appeal by all of the defendants, the motion having been made prior to filing the notice of appeal. She now asserts that the court was without jurisdiction to grant the new trial because of the perfection of the appeal and that now her appeal must be entertained. She is in error. A trial court retains jurisdiction to hear and determine a motion for a new trial after an appeal has been taken from the judgment. (*City of Vallejo* v. *Superior Court,* 199 Cal. 408 [249 Pac. 1084, 48 A. L. R. 610]; and *Estate of Waters,* 181 Cal. 584 [185 Pac. 951].) The order granting the new trial has become final as to defendant, Morris, no appeal

having been taken therefrom by plaintiffs. The judgment as far as that defendant is concerned is vacated and set aside by the order granting the new trial, and the purported appeal therefrom must therefore be dismissed. No appeal lies from a judgment which has been vacated. (*Lantz* v. *Vai*, 199 Cal. 190 [248 Pac. 665].)

The deposition of defendant Bromfield, taken by plaintiffs prior to trial pursuant to section 2055 of the Code of Civil Procedure, was read at the trial and contained the following testimony: "Q. Do you recall anything about orders being issued that the floor not be waxed after that (after the accident)? Mr. Scott: (defendants' counsel) . . . I wish to offer the objection that it is incompetent, irrelevant and immaterial. The Court: Overruled. A. That is right, I issued orders that the floor be not waxed. Q. Was that on account of other accidents besides this one? Mr. Scott: . . . we object as incompetent, irrelevant and immaterial. . . . The Court: Overruled. A. Well, we have had people slip on the San Mateo floor (the floor here involved)." The last answer was corrected by Bromfield to read: "We have had people slip on the floors of both our stores from time to time, either slip or fall, and with these number of . . . a number of incidents like that have happened, I thought it might be wise to try some different preparation on the floor, but even since that, we have had a number of women fall on the floor, *since we have stopped waxing,* so that it does not seem to alter the circumstances greatly. Mr. Scott: At this time, if Your Honor please, I move that the entire answer be stricken out as not responsive to the question, and the jury instructed to disregard the answer. The Court: Denied." Defendants complain that the foregoing constituted a prejudicially erroneous admission of evidence of repair made or precautions taken after the accident to prove negligence, citing *Helling* v. *Schindler*, 145 Cal. 303, 308 [78 Pac. 710]; *Anstead* v. *Pacific Gas & Electric Co.*, 203 Cal. 634 [265 Pac. 487]; *Sappenfield* v. *Main St. & A. P. R. R. Co.*, 91 Cal. 48 [27 Pac. 590]; *Hager* v. *Southern Pacific Co.*, 98 Cal. 309 [33 Pac. 119]; *Limberg* v. *Glenwood Lumber Co.*, 127 Cal. 598 [60 Pac. 176, 49 L. R. A. 33]; and *Morris* v. *Sierra etc. Power Co.*, 57 Cal. App. 281 [207 Pac. 262]. Defendants' contention cannot prevail for several reasons. In the first place defendants' objection to the question originally put was prop-

erly made, that is, that the evidence was incompetent, irrelevant and immaterial. However, the next question was whether the orders to cease waxing were given because of other accidents, and although objected to, the answer before the correction did not deal with precautions taken after the accident. The answer as corrected contains statements with respect to such orders, but defendants' motion to strike the corrected answer was solely on the ground that it was not responsive. Inasmuch as the question did not call for an answer on the subject of giving orders to cease waxing, but the answer did contain statements concerning that subject, defendants should have based their motion to strike on the grounds of incompetency and irrelevancy. This they failed to do. The answer as corrected was in part responsive to the question, but defendants did not in their motion to strike ask that only the unresponsive portions be stricken. Therefore, they cannot now complain of the ruling on their motion. Their motion to strike not having been made upon the proper grounds upon which they now claim the evidence should have been excluded, they cannot raise the question on this appeal. Objections to evidence must be specific and state the correct grounds of inadmissibility before complaint can be made on appeal of the trial court's ruling. (2 Cal. Jur. 269–271). Although proper objection was made to the evidence when the question was first asked, no proper grounds were specified when the same evidence appeared in defendant Bromfield's answer as corrected, to the second question. There was therefore evidence as to orders to cease waxing the floors, to which no proper objection was made, independently of the evidence on that subject, to which proper objection was made. A judgment will not be reversed on appeal under those circumstances, as it cannot be said that defendants were prejudiced thereby.

 In the second place it has been held that if evidence is admissible for any purpose, it must be received, even though it may be highly improper for another purpose. (*Inyo Chemical Co.* v. *City of Los Angeles,* 5 Cal. (2d) 525 [55 Pac. (2d) 850].) Although evidence of the character here in question may not be admissible to prove negligence at the time of the accident, it is proper to impeach the testimony of a witness. (*Inyo Chemical Co.* v. *City of Los Angeles, supra.*) In the case at bar, the record discloses that

prior to the testimony of the witness Bromfield with relation to the cessation of waxing the floor, said witness had testified that he had "looked at the floor (immediately after the accident) and—did not notice anything unusual about the floor," and the defendants at all times maintained that there was nothing wrong with the floor. The evidence of his having later ordered that the floor not be waxed tended to impeach that testimony by showing that he had changed his mind with reference to there being nothing wrong with the floor, and was admissible for that purpose. The word "unusual" as used by the witness under the circumstances may be interpreted to mean "wrong." In the *Inyo Chemical Company* case, *supra,* one of the main issues was whether or not the defendant should have installed and maintained drainage facilities to prevent the flooding of plaintiff's land which was alleged to have been caused by defendant's negligent construction and maintenance of an aqueduct. Defendant's expert witness, who was in charge of the construction of the aqueduct, testified on direct examination that in his opinion no drainage facilities were necessary. On cross-examination he was asked if after the flooding he authorized the construction of spillways. The question was held to be proper as weakening the value of his opinion. It may also be observed that in the instant case defendants made no request that the jury be instructed that the evidence of orders to cease waxing could be considered only as impeaching evidence and not to prove negligence. They would have been entitled to such an instruction (*Inyo Chemical Co.* v. *City of Los Angeles, supra*); but having made no request, they waived their right thereto.

Further, it may fairly be said that defendants were not prejudiced by the admission of the evidence even if it were error. The answer by the witness as corrected and heretofore quoted was definitely favorable to defendants. He stated that they had ceased waxing but that it had no effect on the condition with respect to accidents. People slipped cn the floor whether it was waxed or not. Furthermore, the evidence was not particularly vital because, as we have seen, it was established that the negligence of defendants consisted in an excessive application of wax rather than the mere waxing alone. Therefore, whether or not the waxing was discontinued was not necessarily the turning point in the case,

the jury's implied finding of negligence could be founded on the manner of the application of the wax alone.

Defendants contend that the existence of public liability insurance on their part was brought out at the trial to their prejudice. The following events transpired in that respect: Mrs. Meyers, a store employee, was on duty at the cashier's desk in the store near where and at the time when Mrs. Hatfield fell. She assisted the latter to a seat immediately after the accident and a conversation was had between them. Defendants called Mrs. Meyers to the stand and in the course of the direct examination the following occurred: "Q. Did you have a conversation with her (plaintiff, Pearl Hatfield)? A. When I first got to her, I asked her if she was hurt. Q. She said what? A. 'I don't know. I am terribly embarrassed.' Q. Did you see what her condition was? A. I did. I could. Q. What was her condition? A. She was pregnant. Q. Did you have a conversation with her about that? A. I did. Q. What did she say? A. I asked her how far she was, and she said she was going into her 7th month. I believe that is what she said. Q. Was there anything else said about that condition, or about any advice, she had? A. You mean why she fell or anything like that? Q. Yes? A. She said to me when I took her by the arm, she said, 'I think I slipped on something.' Q. Yes. A. She said, 'I was supposed to go with my husband,' I believe she said 'to the San Joaquin Valley, but instead I come down here and fall down. As a matter of fact I am not supposed to walk much.' She also mentioned something about her pelvis, but I don't remember what it was. Only I do remember she said her pelvis." On cross-examination by plaintiffs, the witness was questioned in regard to that conversation, and it appeared therefrom, among other things, that the witness asked Mrs. Hatfield for her name and then the witness was asked if she told Mrs. Hatfield why she had asked for the name. Defendants' objection to that question was overruled, but it appears not to have been answered, as immediately thereafter the following appears: "Mr. Foley: (plaintiffs' counsel) Whatever the conversation was, will you tell us what it was? A. She said she was embarrassed, and I told her not to feel embarrassed, that I was there to help her. Q. What did you say to her? A. As I remember, I said we were insured." Thereafter the cross-examination

proceeded upon different subjects, defendants failing to object to the question, to move to strike the answer, to assign misconduct, or to request that the jury be instructed to disregard the answer. After the witness was excused, and both parties rested, and out of the presence of the jury, defendants charged plaintiffs' counsel with misconduct and moved for a mistrial. At that time plaintiffs' counsel stated that he did not know what the answer would be. The motion was denied. The court on its own initiative in instructing the jury gave the following instruction: ''You are instructed that no insurance company is a party to this suit and you are instructed to disregard any reference to insurance that may have been made by anyone during the course of the trial.'' Under these circumstances we do not believe that a reversal of the judgment is required. It is the general rule that evidence that defendant is insured is not admissible in personal injury actions, and that the admission thereof is prejudicial error. (10 Cal. Jur. 10-Year Supp. 664, 665.) There are, however, well recognized qualifications to that rule. One of those is founded upon sections 1854 and 2048 of the Code of Civil Procedure. Section 2048 provides: ''The opposite party may cross examine the witness as to any facts stated in his direct examination or connected therewith.'' Section 1854 provides: ''When part of an act, declaration, conversation, or writing is given in evidence by one party, the whole on the same subject may be inquired into by the other; when a letter is read, the answer may be given; and when a detached act, declaration, conversation, or writing is given in evidence, any other act, declaration, conversation, or writing, which is necessary to make it understood, may also be given in evidence.'' These rules have been recently recognized by this court. (*People* v. *Dyer*, 11 Cal. (2d) 317 [79 Pac. (2d) 1071].) Pursuant to those rules it has been held that where the defendant brings out on direct examination part of a conversation relevant to the accident, plaintiff may inquire fully into the entire conversation on cross-examination although the fact that defendant is insured is thereby incidentally disclosed. (*Weis* v. *Davis*, 28 Cal. App. (2d) 240 [82 Pac. (2d) 487]. See also: *Ashley* v. *Rivera*, 220 Cal. 75 [29 Pac. (2d) 199].) It is manifest that these rules entitle a litigant to inquire into on cross-examination the whole of a conversation first touched upon in the direct ex-

amination. Here defendants questioned the witness relative to the conversation on direct examination, and the conversation had to do with the accident and occurred immediately thereafter.

Defendants urge, however, that the injection of insurance into the case was done by plaintiffs' counsel designedly and with the intent to influence the jury, and that therefore prejudicial error was committed. But even assuming that error did result, we do not believe that the defendants may successfully claim prejudice in view of all of the circumstances. It will be remembered that no objection was made by defendants until after the witness Meyers left the witness stand, and that even then defendants never at any time made a motion to strike either the question or the answer or asked the court to instruct the jury to disregard the reference to insurance. In fact they expressed the thought that they did not want the jury so instructed. They contented themselves with a charge of misconduct and a motion for a mistrial made after the witness was excused and at the close of the evidence in the case. The court on its own initiative instructed the jury that insurance was not involved in the case. Manifestly, there was nothing in plaintiffs' cross-examination of the witness to indicate a design and intent on their part to inject insurance into the case and thereby influence the jury; the question asked was merely in regard to the conversation. The witness was defendants' rather than plaintiffs' and the event in question occurred on cross-examination. It cannot be presumed therefore that plaintiffs' counsel knew what the answer would be, as might be the case if the plaintiff or one of his witnesses was testifying. Defendants refer to the affidavits filed in support of defendants' motion for a new trial as showing the improper design and intent on the part of plaintiffs' counsel to influence the jury. The affidavits are conflicting, and the trial court passed on that conflict adversely to defendants in denying their motion for a new trial. Defendants therefore must necessarily depend on the affidavit of plaintiffs' counsel which deals with an interview he had with defendants' witness, Meyers, in which he narrates his conversation with her. That affidavit does not show an improper design on the part of plaintiffs' counsel to inject the insurance issue into the case. It appears therefrom that he merely advised the witness as

814

to what he honestly believed the law to be, that is, ·that if part of a conversation comes into evidence, the whole may be brought out, and that a witness should testify to the exact truth and not according to the instruction of anyone. Also it is worthy of note that plaintiffs' counsel stated, at the time the motion for a mistrial was made, that he did not know what the answer to his question would be. One of the grounds of defendants' motion for a new trial was the claimed misconduct of plaintiffs' counsel in injecting insurance into the case; the trial court denied that motion. We are not inclined to question the trial court's conclusion under the circumstances.

Where counsel is charged with misconduct for improperly injecting insurance into the case, the denial by the trial court of a motion for a new trial made on that ground will be deemed a determination by it of good faith on the part of counsel and that defendants were not prejudiced. (*Levens v. Stocco,* 5 Cal. App. (2d) 693 [43 Pac. (2d) 357].) A denial of a motion for a new trial made upon the ground of misconduct of counsel, although not binding on this court, is entitled to great weight upon an appeal in which complaint is made of the misconduct. (*Citti* v. *Bava,* 204 Cal. 136, 140 [266 Pac. 954] ; *La Fargue* v. *United Railroads of S. F.,* 183 Cal. 720 [192 Pac. 538] ; *Loggie* v. *Interstate Transit Co.,* 108 Cal. App. 165 [291 Pac. 618].)

Finally defendants assert reversible error in the following instruction given to the jury:

"If you believe from the evidence that plaintiff, Pearl Hatfield, at the time and place in question, was in the building of defendants at its invitation, express or implied, and that she sustained injuries without fault upon her part, and that such injuries were proximately caused by *the dangerous condition of said floor* at the place in question, and that *such dangerous condition of said floor* was known to defendant, or in the exercise of reasonable care should have been known to defendants and that *said danger, if any,* was not obvious, and was not known to plaintiff, then you are instructed that plaintiff is entitled to recover damages from defendants therefor.'' Defendants claim that the instruction assumed that the floor was in a dangerous condition, and thereby lead the jury to believe that such was an undisputed fact. It is clear that the instruction is not necessarily susceptible of that construction. It will be noted that although the first

part of the instruction might create that impression, in the latter part the dangerous condition is not assumed, it is there stated: "said danger, *if any. . . .* " (See: *State Compensation Ins. Fund* v. *Lamb,* 96 Cal. App. 236 [273 Pac. 1080].)

In any event the jury was fully, completely, and properly instructed in several other instructions that plaintiffs, in order to recover, must establish that the floor was in a dangerous condition due to the failure of the defendants to exercise due care and any error in the questioned instruction was cured thereby.

Defendants urge in respect to its claim of prejudicial error that because the case is a close one, errors which ordinarily might not be prejudicial became so under such circumstances. That may be true, but the case is not necessarily a close one. The greater number of witnesses or quantity of evidence on one side does not mean that a case is close; nor does a sharp conflict in the evidence make it so. If it did, practically every vigorously contested case would be a close one. In cases of this kind it is ordinarily much simpler for the defendant than the plaintiff to produce evidence because of the accident occurring on premises under his control where many of his employees are present.

Suffice it to say that after a review of the entire record we find nothing therein which in our opinion justifies a reversal of the judgment. Therefore, the judgment as to defendants Levy Brothers, J. D. Bromfield and Millard Scott is affirmed. The appeal of defendant Maebel Morris is dismissed.

Gibson, C. J., Traynor, J., Moore, J., *pro tem.,* and Pullen, J., *pro tem.,* concurred.

Appellants' petition for a rehearing was denied November 17, 1941.