[Civ. No. 12089. First Dist., Div. Two. Dec. 10, 1942.]

MARTIN BROWN, Appellant, v. H. D. McCUAN, Respondent.

36

J. M. Atkinson, Robert G. Partridge and Leo M. Cook for Appellant.

Charles V. Barfield for Respondent.

NOURSE, P. J.—This is an appeal by plaintiff from a judgment entered on a verdict of a jury for defendant. The plaintiff sued for damages resulting from personal injuries received when he was struck by defendant driving his own car. The main error urged on appeal is the refusal of the trial court to give instructions to the jury concerning defendant's liability in the event he had the last clear chance to avoid the accident. Contrary to the usual practice on appeal, therefore, the facts will be viewed in the light most favorable to plaintiff and appellant on the above theory in order to determine whether they would have supported a verdict in plaintiff's favor.

Martin Brown, plaintiff and appellant, was employed by Permanente Corporation as a parking lot attendant in the parking lot maintained by the corporation for its employees' cars. The accident occurred at 7:45 a. m. in the parking lot where Brown was directing the employees to place their cars. At the time of the accident there were three rows of parked cars in this particular lot paralleling a thirty-foot roadway which led directly to the plant, and was used only

for equipment or by employees who had some definite reason to bring their cars closer to the plant. When defendant McCuan, an employee of the plant, drove into the parking lot Brown directed him to park next to the last car in the third row, at which time Brown was ten to fifteen feet to the left of the last car in that row. When McCuan pulled into this parking space, his right front wheel was six feet from the left front wheel of the car next and his right rear wheel was four feet from the left rear wheel of the car next. Brown stepped over to within eighteen inches of the driver's window of McCuan's sedan and requested McCuan to straighten his car and come in closer to the car to his right. Immediately he made this request, Brown turned, took two steps at right angles to McCuan's car, and stopped with his back turned to McCuan's car to talk to an employee who wanted to take his car to the plant. At the time Brown turned, McCuan was looking directly at him, but McCuan immediately turned his head over his right shoulder to watch, through the rear window of his car, where he was backing. McCuan cramped his steering wheel to the right to bring the rear of his car closer to the next car as he backed. This procedure caused the front of McCuan's car to swing out to the left. Brown was hit by the left front wheel of McCuan's car as it swung out, knocking him down and crushing his leg. McCuan knew nothing of the accident till the passenger sitting in the front seat beside him said he thought they had struck Brown. Whereupon McCuan stopped his car within six inches. McCuan knew that if he backed his car in this manner, the front of the car would come very close to the point at which he had last seen Brown, before he turned to look through his rear window, either walking away, as Brown contends, or standing, as McCuan testifies.

 Appellant contends that all the elements necessary to bring the last clear chance doctrine into play are present. In *Girdner* v. *Union Oil Co.*, 216 Cal. 197, 202 [13 P.2d 915], these necessary elements are said to be: "That plaintiff has been negligent and, as a result thereof, is in a position of danger from which he cannot escape by the exercise of ordinary care; and this includes not only where it is physically impossible for him to escape, but also in cases where he is totally unaware of his danger and for that reason unable to escape; that defendant has knowledge that the plaintiff

is in such a situation, and knows, or in the exercise of ordinary care should know, that plaintiff cannot escape from such situation, and has the last clear chance to avoid the accident by exercising ordinary care, and fails to exercise the same, and the accident results thereby, and plaintiff is injured as the proximate result of such failure." In *Johnson* v. *Sacramento Northern Ry.*, 54 Cal.App.2d 528, at 532 [129 P.2d 503], this court, after citing the Girdner case and similar authorities, used this language which is pertinent to the facts here involved: "The doctrine is most frequently applied in situations where a driver or pedestrian has placed himself, through his own negligence, in, or in very close proximity to, the path of an oncoming train or vehicle and is thereafter discovered in such position of danger by the operator of the oncoming train or vehicle in ample time for the latter to avoid the accident by the exercise of ordinary care. In such cases there is a distinct sequence of events which gives the party sought to be charged time for effective action . . . to avoid the accident *after* the discovery of the injured party's peril." And again, on page 534, it was said: "It is also significant to note that the 'situation of danger' or 'position of danger,' referred to in the authorities dealing with the last clear chance doctrine, is reached only when a plaintiff, moving toward the path of an oncoming train or vehicle, has reached a position 'from which he cannot escape by the exercise of ordinary care.' In other words, it is not enough, under the last clear chance doctrine, that plaintiff is merely approaching a position of danger, for until he has reached a position of danger, he has the same opportunity to avoid the accident by the exercise of ordinary care, as has the defendant. In such cases the ordinary rules of negligence and contributory negligence apply, rather than the exceptional doctrine of last clear chance. It is only in cases in which, after plaintiff reaches a position of danger, defendant has a last clear chance to avoid the accident by the exercise of ordinary care, and plaintiff has no similar chance, that the doctrine is applicable."

In applying these requisites to the facts of the case at bar it is manifest that not all of the elements necessary are present. Here Brown was a parking attendant familiar with the practice of parking cars in line, and there is nothing in

the record before the court to indicate that McCuan knew or should have known he was in peril from McCuan's car. The reasonable expectations of McCuan were that Brown, having directed him to back, would realize the usual method whereby a car is brought closer to another car—by backing and cramping the steering wheel toward the direction the car is to go. Further, there is nothing in the record from which the jury could have found that McCuan knew of Brown's peril because of his unawareness, particularly since the negligent act, with which McCuan is sought to be charged is in not turning his head to see if Brown did get out of the way. This is but another way of saying that, if the respondent had not been negligent, he would have observed the appellant's danger and might then have had a clear chance of avoiding the injury.

Appellant admits that the cases by which he seeks to uphold his position are clearly distinguishable on their facts. Apparently this precise factual situation has not arisen before and appellant seeks to place these facts within the principle enunciated in *Nicolai* v. *Pacific Electric Ry. Co.*, 92 Cal. App. 100 [267 P. 758], at page 105: "As held in a number of cases, where a person sees another in a position which is in fact dangerous, he may not rely upon dullness to excuse him from not realizing the danger of the position (*Basham* v. *Southern Pacific Co.*, 176 Cal. 320 [168 P. 359]); and if he sees the dangerous situation he must use reasonable diligence in analyzing the same (*Starck* v. *Pacific Electric Ry. Co.*, 172 Cal. 277 [L.R.A. 1916 E, 58, 156 P. 51]), knowledge of danger being imputed where the circumstances are such as to convey to the mind of a reasonable man that the plaintiff is in a position of peril. (*Harrington* v. *Los Angeles Ry. Co.*, 140 Cal. 514 [98 Am.St.Rep. 85, 68 L.R.A. 238, 74 P. 15].)" It is clear that for the knowledge of appellant's peril to be imputed to the respondent, assuming that he knew the position of the appellant, it must appear that the circumstances were such that a reasonable man would realize the peril caused by unawareness. (*Johnson* v. *Southwestern Engineering Co.*, 41 Cal.App.2d 623 [107 P.2d 417]; *Richardson* v. *Ribosso*, 120 Cal.App. 641 [8 P.2d 226]; *Bogardus* v. *Snyder*, 17 Cal.App.2d 411 [62 P.2d 153]; *Gulino* v. *Finocchiaro*, 128 Cal.App. 496 [17 P.2d 754].) Respondent here is in the position of a person who did not know and had no

reason to believe that Brown was in a position of peril by reason of unawareness, hence the instructions offered by appellant were properly refused by the trial court.

As a second ground for reversal the appellant complains of the respondent's counsel's conduct at the trial. Although neither the employer nor his compensation insurance carrier was made a party to the action, the respondent's counsel asked appellant on the stand whether he had lost any wages, received any compensation, or incurred any doctor's bills. Objections were sustained to all these questions and the jury instructed to disregard them. Further, respondent's counsel asked the doctor, who testified to the nature of appellant's injury, by whom the appellant was referred to him, eliciting the response that the insurance carrier had done so. Once in his final argument respondent's counsel referred to the compensation carrier without objection in order to cast doubt on the integrity of the appellant's witnesses; he also argued that Mr. Brown could go before the Industrial Accident Commission "and ask for a permanent rating," which fact explained the lack of testimony of the doctor employed by the carrier as to the permanency of Brown's injury. Appellant objected, and the court instructed the jury to disregard everything not in evidence before the court in determining the verdict. Appellant's position that such conduct was prejudicial error justifying a reversal is not well taken. Appellant himself put before the jury the fact that an insurance company was involved in the case by introducing exhibits for medical expenses which were all addressed to the insurance carrier, and again when he attempted to impeach one of defendant's witnesses with a written statement given before the trial to an insurance investigator, and in his final argument, after respondent's counsel had made the remark about a permanent rating. There is nothing to prevent a prejudicial fact such as the existence of insurance going before the jury so long as it is relevant to an issue in the case. (*Hatfield* v. *Levy Brothers*, 18 Cal.2d 798 [117 P. 2d 841]; *Weis* v. *Davis*, 28 Cal.App.2d 240 [82 P.2d 487]; *Gillette* v. *San Francisco*, 41 Cal.App.2d 758 [107 P.2d 627].) Here the jury might have found the testimony of the doctor biased by reason of his insurance company connection. At least that was the object which the respondent sought and the evidence objected to was admissible to prove that theory.

Finally, it must be noted that appellant urged this claim

of misconduct of counsel before the trial judge when the motion for new trial was made and denied. In *LaFargue* v. *United Railroads*, 183 Cal. 720 [192 P. 538], the court discussed the weight to be given the denial of such a motion by the trial judge when such grounds were urged and said at page 724: "In doing this the court must be deemed to have concluded that no prejudice was suffered by defendant by reason of any of the matters to which we have referred. . . . The trial judge is in a much better position than an appellate court to determine whether the verdict in a case is probably due wholly or in part to such alleged misconduct as we have here, and his conclusion in the matter should not be disturbed unless, under all the circumstances appearing it is plainly wrong. This we think may not fairly be said here." Whether counsel's references to compensation insurance, where the jury was admonished to disregard it each time, constituted prejudicial misconduct preventing a fair trial is a question of fact. The trial judge is in a much better position to know whether a miscarriage of justice has taken place and his opinion is entitled to great weight in the absence of a clearly erroneous decision. The trial judge's determination must also be considered to be an adjudication of counsel's good faith. (*Hatfield* v. *Levy Brothers*, 18 Cal.2d 798 [117 P.2d 841].)

The cases on which appellant relies to support his position are clearly distinguishable in that they involve appeals from orders granting new trials where one of the grounds for the granting of the motion for a new trial was prejudicial misconduct of the attorney. (*Baroni* v. *Rosenberg*, 209 Cal. 4 [284 P. 1111]; *Amore* v. *Di Resta*, 125 Cal.App. 410 [13 P.2d 986]; *Ferrario* v. *Conyes*, 19 Cal.App.2d 58 [64 P.2d 975]; *Mangino* v. *Bonslett*, 109 Cal.App. 205 [292 P. 1006].) *Walling* v. *Kimball*, 17 Cal.2d 364 [110 P.2d 58], notes this difference in approach to the problems of what constitutes prejudicial misconduct on appeal. But, when the case comes to us after the trial judge has denied a new trial urged upon these grounds and has thus found that the claimed misconduct was not prejudicial, the judgment must be affirmed unless there is no reasonable basis for such finding. We may not assume that the jury denied appellant any recovery because it believed he might get some compensation

from another source. It is more reasonable to assume that the verdict followed the evidence on the issues of negligence and contributory negligence.

The judgment appealed from is affirmed.

Sturtevant, J., and Spence, J., concurred.