Filed 6/1/26  Rodriguez v. Vallarta Food Enterprises CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| MARIA RODRIGUEZ,<br><br>     Plaintiff and Appellant,<br><br>v.<br><br>VALLARTA FOOD ENTERPRISES, INC.,<br><br>     Defendant and Respondent. | B343389<br><br>(Los Angeles County<br>Super. Ct. No. 23BBCV00863) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Sarah J. Heidel, Judge.  Affirmed.

Vaziri Law Group, Mark Giannamore; Law Office of Mohammed Aly and Mohammed Aly for Plaintiff and Appellant.

Dunbar & Derossi and Matt D. Derossi for Defendant and Respondent.

_____

Plaintiff Maria Rodriguez appeals from a judgment entered after the trial court granted summary judgment in favor of defendant Vallarta Food Enterprises, Inc. (Vallarta) in this action alleging negligence and premises liability based on a slip-and-fall incident at one of Vallarta's stores. Because Vallarta satisfied its burden on summary judgment and Rodriguez has not shown a triable issue of material fact, we affirm the judgment.

## BACKGROUND

### A. The Complaint

On April 20, 2023, Rodriguez filed a form complaint against Vallarta, asserting causes of action for negligence and premises liability. She alleged that on July 29, 2021, she "was proceeding with reasonable care" at premises "negligently maintained, owned, managed, and/or inspected" by Vallarta, "when she encountered" a "wet and slippery substance" on the "floor in an area where [Vallarta] knew or should have known [its] customers would walk," causing her to "slip and fall to her injury." Rodriguez further alleged that "this dangerous condition existed for a sufficient period of time, that [Vallarta] knew about this dangerous condition, that [Vallarta] should have remedied the condition and/or warned persons such as [Rodriguez] of same, and that [Vallarta's] failure to do so, notwithstanding [its] duty to maintain the premises in a reasonably safe condition, was negligent."

On August 12, 2021, two weeks after Rodriguez's fall and more than one and one-half years before she filed her complaint, an attorney then representing Rodriguez sent a letter to Vallarta demanding that Vallarta "take all necessary steps to preserve any and all evidence," specifically surveillance video of the incident. This letter is pertinent to a spoliation of evidence claim

2

Rodriguez made in opposing the summary judgment motion that we address (and reject) *post*.

**B.    Factual Summary**

Rodriguez fell at 9:09 a.m., while she was shopping in the produce department at a Vallarta store in Burbank.

We derive the following factual summary from evidence the parties presented on summary judgment, including but not limited to, video stills from a surveillance video of the incident that Vallarta produced to Rodriguez during discovery[1] and transcripts from the depositions of Rodriguez, Evelyn Hernandez (a Vallarta customer service manager who was working in the store when the incident occurred), and Jose Sorto (the Vallarta store manager who was also in the store when the incident occurred).

**1.    *Circumstances and inspections of the scene before Rodriguez's fall***

As reflected in video stills from the surveillance video, at 8:20 a.m., 49 minutes before Rodriguez's fall, a store employee used a hose to spray water onto produce located on the store's "wet rack," an area where produce was displayed and accessible to customers. A "PIG mat" was glued to the floor next to the wet rack. The mat had a plastic bottom and a carpeted top that could

---

[1] In support of its summary judgment motion, Vallarta lodged the surveillance video with the trial court. Rodriguez did not provide the video to this court. The appellate record includes numerous stills from the video that the parties relied on in making their respective cases on summary judgment, including stills showing a Vallarta employee's inspections of the subject area of the store prior to Rodriguez's fall, and stills showing the precise location where Rodriguez slipped and fell.

absorb liquid and prevent it from spilling onto the adjacent linoleum tile flooring. There is no evidence in the record regarding the quantity of liquid the mat could absorb.

The wet rack was equipped with sprinklers that could be set to spray water onto the produce at adjustable intervals. There is no evidence in the record revealing when these sprinklers last activated prior to Rodriguez's fall. Nor is there evidence indicating that these sprinklers caused water to spill onto the mat or the floor. Sorto and Hernandez both testified they were not aware of such spillage occurring due to activation of the sprinklers. Sorto testified that when customers grabbed wet produce off the wet rack drops of water "could" fall off the produce and land on the floor. Hernandez testified that although the produce "[c]ould be" wet, she had never seen water on the floor as a result of customers taking produce off the wet rack.

At 8:26 a.m., an employee ran a mop over the linoleum floor next to the PIG mat in the wet rack area. The employee did not bring a water bucket to use with the mop. At 8:27 a.m., the employee placed a yellow caution cone on the linoleum floor where he had mopped.

Beginning at approximately 8:31 a.m., another employee conducted a formal "Gleason inspection" in the area around the wet rack. Pursuant to Vallarta policy (in place at the time of the subject incident), every 30 minutes an employee walks through the entire store to ensure there are no liquids or other items on the floor. If anything is found, the employee must clean it up immediately. During the inspection, the employee carries a broom, a dustpan, and a towel. If other items are needed for cleanup (e.g., a mop), the employee must call for assistance and stay at the location of the spill. The employee also carries a

4

"Gleason device" to electronically record information about the inspection, including whether an area on the predetermined, mandatory inspection route required a cleanup of liquid or a dry item. One button on the device is pressed to record the presence of liquid and another to record the presence of a dry item.

During the inspection of the area commencing at approximately 8:31 a.m., the employee found no wetness on the linoleum floor near the wet rack. She examined the floor, walking all around the yellow caution cone. She carried a towel in case she needed to wipe up liquid, but she did not use it. At 8:32 a.m., she used a broom and a dustpan to sweep dry items from the PIG mat. She recorded the results of her inspection using the Gleason electronic device.

The same employee conducted her next Gleason inspection of the area around the wet rack beginning at approximately 9:02 a.m., and again she found no wetness on the linoleum floor. At 9:03 a.m., she used the broom and the dustpan to sweep dry items from the PIG mat. She did not use the towel to wipe up any liquid.

Between 8:32 and 9:09 a.m., customers walked through the area adjacent to the wet rack at least 18 times without incident.

### 2. *Rodriguez's fall*

Between 9:06 and 9:08 a.m., Rodriguez walked back and forth through the area adjacent to the wet rack without incident and noticed no wetness on the linoleum floor or the PIG mat.

At 9:09 a.m., approximately six minutes after the last Gleason inspection of the area, Rodriguez was walking on the linoleum floor next to the PIG mat when she slipped and fell. Stills from the surveillance video show that Rodriguez's position when she slipped was above the yellow caution cone (in other

5

words, on the far side of the cone from where the camera was located). She landed with the left side of her body on the PIG mat and the lower part of her legs and her feet on the linoleum floor.

After the fall, Rodriguez noticed that the back of her shorts were wet where they made contact with the PIG mat. She confirmed at her deposition that she never observed any water on the mat with her eyes or touched any water with her hands. She concluded there was water on the mat because her shorts were wet after the fall.

Approximately one minute after Rodriguez fell, a customer helped her stand up. Rodriguez walked back over the floor where she had slipped and did not have an issue or slip a second time. Nor did she observe any water on the linoleum floor. She walked to the front of the store near the cash registers and told customer service manager Evelyn Hernandez that she had fallen.

### 3. *Inspection of the area after Rodriguez's fall*

Rodriguez led Hernandez to the place where the incident occurred. Hernandez inspected the linoleum floor in and around the area where Rodriguez said she slipped. Hernandez did not find anything on the floor, including any wetness. Nor did Hernandez observe any liquid on the PIG mat in the area where Rodriguez fell. Hernandez took a photo of Rodriguez's knee and provided it to store manager Jose Sorto.

Sorto spoke with Rodriguez before she left the store following the incident. After Rodriguez left the store, Sorto inspected the area where she slipped. This was approximately 18 minutes after the fall. He had reviewed the surveillance video and observed that she slipped on the linoleum floor in an area above the yellow caution cone (when looking at the video or the

6

stills).  He found no wetness on the floor in this area.  When he inspected the floor on the other side of the cone (below the cone when looking at the video or the stills)—an area where Rodriguez did *not* slip—he discovered little drops of water that he wiped up with a paper towel.  He took one or two photos of the wet paper towel and sent the photo(s) to Vallarta's corporate loss prevention department.

A still from the surveillance video shows that at 9:37 a.m., approximately 28 minutes after Rodriguez fell, an employee may have been wiping the PIG mat with a towel.

## C.     Rodriguez's Discovery of Photos Taken by Vallarta's Employees

As part of her spoliation or concealment of evidence claim, discussed *post*, Rodriguez references the photo(s) Sorto said he took of the wet paper towel on the linoleum floor on the opposite side of the caution cone from where she slipped.

During Sorto's deposition, after Sorto testified about the photo(s) he took, Rodriguez's counsel noted that in response to form interrogatories Vallarta identified four photographs but did not produce them in response to Rodriguez's document requests. The following exchange occurred between counsel:

"[Rodriguez's counsel:]  I assume that you're going to get those [the photos] to me, counsel?

"[Vallarta's counsel]:  Depends on what the request was.

"[Rodriguez's counsel]:  Okay.  Well, then I'll tell you what I do.  What I always do when I was on the defense.  I'll do some follow-up discovery.

"[Vallarta's counsel]:  That's fine."

This was two months before Vallarta filed its motion for summary judgment and five months before Rodriguez filed her

opposition.  There is no indication in the record that Rodriguez sent a follow-up discovery request seeking production of the photos.

To the extent Rodriguez believed the photos were responsive to the document requests she served prior to Sorto's deposition, she did not file a motion to compel production of the photos.[2]

## D.    Vallarta's Motion for Summary Judgment
### 1.    *Moving papers*

In July 2024, Vallarta filed a motion for summary judgment, arguing Rodriguez could not establish the causation element of her causes of action.  Vallarta argued, Rodriguez "has no direct evidence of what caused her to fall, and therefore she assumes, because she felt wetness on her shorts from landing on

---

[2] It is not clear from the record if Rodriguez had a claim that the photo of the wet paper towel was responsive to her document requests.  In opposing the summary judgment motion, she highlighted the following requests, as set forth in Vallarta's responses to the document requests:  "ALL DOCUMENTS, including but not limited to video surveillance and photographs, which depict the SUBJECT INCIDENT" and "ALL DOCUMENTS, including but not limited to photographs or video footage, which depict the area of YOUR PREMISES where the SUBJECT INCIDENT occurred from the day of the SUBJECT INCIDENT."  The record does not include Rodriguez's original document requests, and therefore we do not know how she defined the term "SUBJECT INCIDENT" in the requests.  Without the definition, it cannot be determined if the photo of the wet paper towel on the linoleum floor, on the opposite side of the yellow caution cone from where Rodriguez slipped, was responsive to her document requests.

an area unrelated to where she started to fall, that she must have fallen due to wetness on [Vallarta]'s floor mat.  Given that [Rodriguez] never saw, touched, smelled, or photographed the alleged wetness, and no wetness was ever found afterwards [at the place where Rodriguez slipped], this amounts to guess, conjecture, and speculation."

Vallarta also argued there is no evidence demonstrating its employees caused wetness by "stocking the wet rack, misting the vegetables at the wet rack, or performing a light spot mop of the checkered linoleum flooring near the wet rack."  According to Vallarta's accident reconstruction expert, who submitted a declaration in support of the summary judgment motion, based on the evaporation formula for liquids such as water, "No wetness would still have been present [at the time of Rodriquez's fall] either on the floor or on the Pig Mat from the employees stocking, misting, or mopping 49-43 minutes earlier."  Vallarta asserted that in any event, it "exercised reasonable care when it placed a bright yellow caution cone" in the area.

Vallarta further argued it did not have constructive notice of any wetness on the floor, given its employee performed two formal inspections of the area—one approximately six minutes before Rodriguez fell—and no wetness was found.  Vallarta also pointed out that numerous customers walked through the area without incident prior to Rodriguez's fall.

### 2.    *Opposition*

Rodriguez served Vallarta with a demand for an inspection of the Burbank store where the incident occurred, and noticed the inspection for October 12, 2024, more than three years after the incident and 10 days before Rodriguez's opposition to the summary judgment motion was due.  Vallarta's counsel notified

9

Rodriguez's counsel that Vallarta had changed the flooring in the store on August 21, 2024. Vallarta offered to make another store available for Rodriguez's inspection, one with the same type of flooring the Burbank store had at the time of the July 29, 2021 incident. On October 16, 2024, Rodriguez's "safety and liability expert" inspected a Vallarta store in Lancaster.

A senior forensic expert, who was not the individual who conducted the inspection in Lancaster, but who worked for the same engineering firm, submitted a declaration in support of Rodriguez's opposition to the summary judgment motion. The expert stated that he attempted to ascertain "the proximate slip-resistance index of the subject floor finish within the [i]ncident [Burbank] location," based on the inspection of the Lancaster location, but he could not do so because Vallarta had not produced (1) information regarding "patron and shopping-cart counts for the exemplar [Lancaster] store"; (2) "photographs of the condition of the floor at the [i]ncident location identifying the wear of the subject floor at the time of the [i]ncident and subsequently at the time of the replacement of the floor finish"; and (3) information "regarding any applications of waxes, sealants, or other floor additives at the exemplar location prior to the [expert] inspection." Rodriguez has pointed to nothing in the record indicating she ever requested such information from Vallarta.[3]

In her opposition to the summary judgment motion, Rodriguez argued that Vallarta did not satisfy its burden on summary judgment and that she showed triable issues of

---

[3] The trial court sustained Vallarta's objections to the expert's opinions regarding the cause of Rodriguez's fall, and Rodriguez does not challenge the evidentiary ruling on appeal.

material fact.  She stated, among other things, that "the evidence shows that [Vallarta]'s employees were actively engaged in activities that could create wet conditions on the floor, such as spraying produce with water and mopping without proper equipment" (an apparent reference to the absence of a water bucket when the employee mopped the linoleum floor before placing the yellow caution cone).  She also noted, "After the incident, [Sorto] observed little drops of water on the floor near the area where [she] fell, on the side opposite the wet rack."  She further stated that the wetness on her shorts and a video still of an employee wiping the PIG mat 28 minutes after her fall "support a reasonable inference that the wet condition of the mat and floor caused [her] fall and resulting injuries."

Rodriguez asserted that, because Vallarta did not include any facts in its separate statement of undisputed material facts regarding its placement of the yellow caution cone, the argument in its memorandum of points and authorities that it exercised reasonable care by placing the cone was improper.

She also argued Vallarta could not "shift the burden to [her] by spoliating and concealing evidence."  She referenced the photos taken by Hernandez and Sorto on the date she fell and the change of flooring at the Burbank store where the incident occurred.

### 3.    *Trial court's ruling and judgment*

On November 5, 2024, the trial court held a hearing on Vallarta's motion for summary judgment and took the matter under submission.  On November 8, 2024, the court issued an order granting the motion.  Thereafter, the court entered

11

judgment in favor of Vallarta, and Rodriguez filed a timely notice of appeal.[4]

## DISCUSSION

Rodriguez contends Vallarta failed to satisfy its burden on summary judgment, but even if the burden shifted to her, she showed triable issues of material fact precluding summary judgment. We disagree with her contentions and conclude summary judgment was proper.

### A.    Standard of Review

A trial court should grant summary judgment "if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) A defendant may establish a right to summary judgment by showing that one or more elements of the cause of action cannot be established or that there is a complete defense to the cause of action. (Code Civ. Proc., § 437c, subd. (p)(2).)

Once the moving defendant has satisfied this burden, the burden shifts to the plaintiff to show that a triable issue of

---

[4] After the trial court entered judgment, Rodriguez filed a motion for reconsideration of the order granting summary judgment. The court held a hearing on the motion for reconsideration after Rodriguez filed her notice of appeal from the summary judgment. The court denied the motion for reconsideration based on lack of jurisdiction and stated that even if it retained jurisdiction, it would deny the motion on the merits. Although Rodriguez referenced the motion for reconsideration in her opening appellate brief, she does not raise any legal contentions for us to review regarding the denial.

material fact exists as to each cause of action.  (Code Civ. Proc., § 437c, subd. (p)(2).)  A triable issue of material fact exists where "the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof."  (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 (*Aguilar*).)  "[A]n issue of fact can only be created by a conflict of evidence.  It is not created by speculation or conjecture."  (*Horn v. Cushman & Wakefield Western, Inc.* (1999) 72 Cal.App.4th 798, 807; *Aguilar*, at p. 864 ["Speculation . . . is not evidence," and it is not sufficient to show a triable issue of material fact].)

"We review the trial court's decision de novo, considering all the evidence set forth in the moving and opposition papers except that to which objections were made and sustained." (*Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 65-66.)  We view the evidence and the inferences reasonably drawn from the evidence "in the light most favorable to the opposing party." (*Aguilar*, *supra*, 25 Cal.4th at p. 843.)

We "are not bound by the reasons in [the trial court's] summary judgment ruling; we review the ruling of the trial court, not its rationale."  (*Joshi v. Fitness International, LLC* (2022) 80 Cal.App.5th 814, 824.)  "Thus, a reviewing court 'will affirm a summary judgment if it is correct on any ground that the parties had an adequate opportunity to address in the trial court, regardless of the trial court's stated reasons.' "  (*Nicoletti v. Kest* (2023) 97 Cal.App.5th 140, 144.)

## B.    Applicable Law

"The elements of a negligence claim and a premises liability claim are the same: a legal duty of care, breach of that duty, and proximate cause resulting in injury."  (*Kesner v. Superior Court*

13

(2016) 1 Cal.5th 1132, 1158.)  To prevail on a cause of action against a premises owner in a slip-and-fall case, there must be proof " ' "that a dangerous condition existed, and that the defendant knew or should have known of it." ' " (*Kaney v. Custance* (2022) 74 Cal.App.5th 201, 221.)

Grocery store owners are not insurers of their patrons' safety but do owe them a "duty to exercise reasonable care in keeping the premises reasonably safe." (*Ortega v. Kmart Corp.* (2001) 26 Cal.4th 1200, 1205 (*Ortega*).)  If an owner or a store employee has actual or constructive knowledge of a dangerous condition on the premises, the owner has a duty to remedy it. (*Id*. at p. 1206; *Hatfield v. Levy Brothers* (1941) 18 Cal.2d 798, 806; *Getchell v. Rogers Jewelry* (2012) 203 Cal.App.4th 381, 385-386.)  To establish causation, the plaintiff must show that the store owner either directly caused the dangerous condition or had actual or constructive knowledge of the dangerous condition. (*Ortega*, at pp. 1205-1206; *Hatfield*, at p. 806.)

Where a dangerous condition is created by the premises owner's employee, the owner is charged with notice of that condition. (*Getchell v. Rogers Jewelry*, *supra*, 203 Cal.App.4th at p. 385.)  Where a dangerous condition is created by a third party, the owner has constructive knowledge of that condition when the "condition has existed long enough for a reasonably prudent person to have discovered it." (*Ortega*, *supra*, 26 Cal.4th at p. 1207.)  If "there is no direct evidence of the length of time the dangerous condition existed, the plaintiff can demonstrate the store owner had constructive notice of the dangerous condition by showing that the site had not been inspected within a reasonable period of time." (*Moore v. Wal-Mart Stores, Inc.* (2003) 111 Cal.App.4th 472, 477.)  "[E]vidence of the owner's failure to

14

inspect the premises within a reasonable period of time is sufficient to allow an inference that the condition was on the floor long enough to give the owner the opportunity to discover and remedy it." (*Ortega*, at p. 1203.) The issue of whether a store's inspections were reasonable is ordinarily a question of fact (*id.* at p. 1213) but may be decided as a matter of law when the evidence "is insufficient to support an inference that the defendant proprietor failed to exercise the care required." (*Girvetz v. Boys' Market, Inc.* (1949) 91 Cal.App.2d 827, 831, 832 [one and one-half minutes was too short as a matter of law to provide constructive notice to the store owner of the dangerous condition, a banana on the floor].)

C.   **Analysis**
   1.   ***Vallarta satisfied its burden***
      Rodriguez contends Vallarta failed to satisfy its initial burden on summary judgment, arguing (1) because Rodriguez testified that her shorts became wet when she landed on the mat after her fall, Vallarta did not negate the existence of a dangerous condition; (2) because Vallarta "did not assert any facts whatsoever regarding the source of the water or the timing of the spill," "admit[ted] that is placed a 'bright yellow caution cone in the area' approximately forty-three minutes before the incident," and the incident occurred in a "high-traffic location where spills were frequent and expected," Vallarta "did not establish that it lacked actual or constructive notice of the water on its floor"; and (3) Vallarta was precluded from shifting the burden to Rodriguez because it engaged in spoliation of evidence. None of these arguments has merit.
      In its moving papers, Vallarta showed that as a matter of law, Rodriguez cannot prevail on a cause of action for negligence

or premises liability because she cannot establish a dangerous condition caused her to slip and fall. No one observed anything on the linoleum floor in the place where Rodriguez slipped—not the employee who conducted a formal inspection of the area approximately six minutes before Rodriguez fell; not Rodriguez; and not Hernandez and Sorto who inspected the area after Rodriguez fell. That the incident occurred near a wet rack, where produce is sprayed with water and customers may take wet produce off the rack, does not establish Vallarta had actual or constructive notice of water on the floor in the place where Rodriguez slipped (where no water was found). Rodriguez's argument to the contrary would make Vallarta strictly liable for any slip-and-fall that occurs without an obvious cause near the wet rack. But this is not the law. " '[N]egligence is never presumed' " in a situation such as this. (*Buehler v. Alpha Beta Co.* (1990) 224 Cal.App.3d 729, 734.) The burden shifted to Rodriguez to show a dangerous condition caused her fall.

We reject Rodriguez's claim that spoliation or concealment of evidence precluded Vallarta from shifting the burden to Rodriguez because it "hindered [her] ability to prove causation." At least five months before she filed her opposition to the summary judgment motion, Rodriguez was aware of the photo(s) Sorto took of the wet paper towel he used to wipe the little drops of water off the linoleum floor on the opposite side of the yellow caution cone from where she slipped. At Sorto's deposition, Rodriguez's counsel did not contend the photo was responsive to the document requests Rodriguez had already served. Rather, counsel said he would send Vallarta "follow-up discovery" requesting the photo (and others Vallarta identified in a response to a form interrogatory). Rodriguez did not serve a subsequent

16

discovery request for the photos or file a motion to compel Vallarta to produce the photos. At oral argument in this appeal, Rodriguez's counsel claimed Vallarta failed to preserve or destroyed the photos but acknowledged there is nothing in the record supporting this claim. Thus, we have no cause to reverse the summary judgment based on spoliation or concealment of photos. In any event, we fail to see how the photo, as described in Rodriguez's appellate briefing, would tend to prove causation, given Sorto testified the photo depicted a small amount of wetness found 18 minutes after Rodriguez fell in a location where she did not slip.

As to the replacement of the linoleum flooring at the Burbank store, it is not clear the evidence preservation letter covered this, given the letter did not specifically mention the flooring, indicate Rodriguez ever planned to inspect the flooring, or request notice before Vallarta made improvements to the property. In any event, Rodriguez's inability to inspect the linoleum flooring at the Burbank store was a problem of her own making, as she delayed more than three years before requesting an inspection. Finally, any inspection of the flooring would be irrelevant to our analysis, as we conclude Rodriguez cannot establish that there was water on the floor where she slipped (the purported dangerous condition) and that Vallarta had actual or constructive notice of it. Thus, we have no cause to reverse the summary judgment based on spoliation of evidence related to the flooring.

17

## 2. *Rodriguez has not shown a triable issue of material fact*

Rodriguez's claim that she slipped on water (or any hazard) is not based on evidence. It is based on speculation, which is insufficient to show a triable issue of material fact.

Rodriguez testified that her shorts became wet when they made contact with the PIG mat after her fall. This does not raise a triable issue that the linoleum floor where she actually slipped was wet.

The evidence shows that approximately 18 minutes after Rodriguez fell, Sorto wiped little drops of water off the linoleum floor on the opposite side of the yellow caution cone from where she slipped. Again, this does not raise a triable issue that the area where Rodriguez slipped was wet.[5] No one observed any wetness there during inspections before and after her fall.

There is no evidence raising a triable issue of fact that Vallarta had actual or constructive notice of a dangerous condition on the floor where Rodriguez slipped. She argues that a "reasonable juror" could find Vallarta had such notice because its employees were "engaged in activities that *could* create wet conditions on the floor." (Italics added.) As discussed *ante*, Vallarta is not the insurer of its customers' safety, and it is not strictly liable for every slip-and-fall that occurs in the vicinity of

---

[5] At oral argument in this appeal, Rodriguez's counsel asserted that Sorto found the drops of water *mere inches* away from where Rodriguez's foot slipped. The video stills that Rodriguez submitted with her opposition to the summary judgment motion show otherwise. The distance is undisputably a matter of feet, not inches.

the wet rack, regardless of evidence of a dangerous condition at the actual place where the customer slipped.

Assuming for purposes of argument that there was liquid on the floor where Rodriguez slipped, based on the evidence in the record, it would be speculative to conclude that Vallarta created the condition as opposed to a customer. Under a scenario where a customer created the condition, we would have to conclude there was no triable issue of fact that Vallarta had actual or constructive notice of the condition, given its employee inspected the area a mere six minutes before Rodriguez fell and found no wetness or other hazard on the floor where Rodriguez slipped.

Because Vallarta satisfied its burden on summary judgment, and Rodriguez has not shown a triable issue of material fact, summary judgment was proper.

## DISPOSITION

The judgment is affirmed. Respondent is entitled to recover costs on appeal.

NOT TO BE PUBLISHED

M. KIM, J.

We concur:

BENDIX, Acting P. J.　　　　　WEINGART, J.

19