[Civ. No. 25533. First Dist., Div. One. Apr. 29, 1970.]

ROBERT O. MAROCCO, Plaintiff and Respondent, v.
FORD MOTOR COMPANY, Defendant and Appellant.

## COUNSEL

DeMeo, DeMeo, Foster & Waner, DeMeo, DeMeo, Foster, Waner & Hood and John F. DeMeo for Plaintiff and Respondent.

Barfield, Barfield & Dryden, Barfield, Barfield, Dryden & Ruane and Cyril Viadro for Defendant and Appellant.

## OPINION

**SIMS, J.**—Defendant manufacturer has appealed from a judgment awarding the plaintiff damages for injuries to his left arm which he claimed were caused when the transmission selector lever in the unattended car he had been operating slipped from the park to the reverse position. His arm was crushed between the backing car and the centerpost of his garage while he was attempting to stop the vehicle. It has also appealed from an order denying its motion to tax costs.[1] Plaintiff claimed, and

---

[1] A third appeal, from an order denying the manufacturer's motion for judgment notwithstanding the verdict (Code Civ. Proc., former § 963, subd. 2, now § 904.1, subd.(d)), has been abandoned by failure to refer to that ruling in the manufacturer's briefs. (*Pelton* v. *Andrews* (1937) 24 Cal.App.2d 124, 128 [74 P.2d 528]; and see

offered evidence to show, that the transmission selector lever mechanism was manufactured from inadequately hard material, which would not properly withstand wear, and that it was assembled with the omission of a part. He sought recovery on the theories of strict liability, implied warranty and negligence.

The appeal from the judgment is predicated solely on the contention that the trial judge committed prejudicial error in allowing the plaintiff to introduce, over objection, evidence of other defects in the model of automobile involved which had no connection with the operation of the transmission selector lever mechanism. The manufacturer also contends that the trial court improperly allowed the plaintiff the costs of his attorney's attendance at depositions in another county. These contentions are examined and it is determined that the court erred in admitting the questioned evidence, but that the error complained of did not result in a miscarriage of justice, and that the trial court properly refused to strike the costs claimed by plaintiff. The judgment and orders must be affirmed.

### Ruling on the Evidence

Before the trial of the case the plaintiff gave notice of a request (see Evid. Code, § 453) that the court take judicial notice of the following publication: "Federal Role in Traffic Safety, hearings before the Subcommittee on Executive Reorganization of the Committee on Government Operations, United States Senate, Eighty-Ninth Congress, Second Session, Equipment Defects or Failures 1960-66, Including Correction Efforts And Recall Campaigns, December 1966, Appendix, Printed for the use of the Committee on Government Operations, U. S. Government Printing Office, Washington: 1967, 76-624." The defendant filed its objection, and thereafter the plaintiff designated the portions of the public document which he sought to offer into evidence "for all proper purposes, including but not limited to, the issues of notice to defendants, admissions against interest, and for purposes of impeachment. . . ."

Defendant's objection that the court could not take judicial notice of any part of the records of a congressional hearing was properly overruled. (Evid. Code, § 452, subd. (e); *Love* v. *Wolf* (1964) 226 Cal.App.2d 378, 403 [38 Cal.Rptr. 183]; *Wilson* v. *Loew's, Inc.* (1956) 142 Cal.App. 2d 183, 188 [298 P.2d 152] [cert. dism. (1958) 355 U.S. 597 [2 L.Ed.2d 519, 78 S.Ct. 526]]; Witkin, Cal. Evidence (2d ed. 1966) § 167, pp.

Cal. Rules of Court, rule 15(a); *Beverly Hills Nat. Bank* v. *Glynn* (1968) 267 Cal. App.2d 859, 869 [73 Cal.Rptr. 808]; and *United States Liab. Ins. Co.* v. *Haidinger-Hayes, Inc.* (1968) 263 Cal.App.2d 531, 540 [69 Cal.Rptr. 373].) That order must be affirmed.

153-154.) The defendant does not seriously question that ruling. It relies upon the principle that "the official character of a document will not make otherwise inadmissible material therein admissible." (*Love* v. *Wolf, supra,* 226 Cal.App.2d at p. 403.)

The portions of the record of the hearing involved in this case consist of (1) a senatorial request to manufacturers for ". . . a complete listing of all bulletins, notices, and other correspondence to your dealers or owners relating to product or equipment defect or failure since 1960"; (2) a reply from one identified as the president of the defendant manufacturer which in part recites, "In response to your request, Ford Motor Co. herewith makes available to you a complete report on product service campaigns conducted by the company from 1960 to the present. Campaigns are the means by which we make corrections in cars awaiting shipment, in transit, already in dealer stocks, or in customers' hands. They are made without charge to the customers. [¶] For each campaign we have included the title, a description including corrective action taken, the number of units involved and a report on results"; and, (3) as designated by the plaintiff, reference to 44 of the product service campaigns which set forth various matters in which corrective action had been taken with various makes of automobiles manufactured by the defendant during the model years 1960-1966, inclusive.

The trial court recognized the principle asserted by defendant. It denied the request that judicial notice be taken of the entire report. After considering the portions designated by the plaintiff, the court ruled that it would take judicial notice of the senatorial request, the president's reply, and from the 44 items, the 10 items which referred to a 1964 Thunderbird, which was the year model and make of the automobile involved. The extracts were thereafter read to the jury.

The president's letter was correctly characterized by the trial judge as follows: ". . . the letter of Mr. Miller acknowledges metallurgical failures in the past. But it's largely, as I think it's reasonable to expect, an exculpatory letter in the sense that he points out—and this is one reason why I think the letter as a whole should, in fairness, go in— points out that this is infinitesimal and that the general safety record and safety program and inspection procedure of the Ford Motor Company is remarkable. And he refers to the fact that the overall picture presents one of the wonders of the mechanical age, or words to this effect, which I am reasonably sure is correct."[2]

---

[2]The reference to metallurgical failures occurs in the following passage: "The immensely complex process which produces the automobile is usually called mass production.

"Yet every single one of the 9 to 10 million automobiles being built this year is the individualized product of thousands of hands and machines interacting sequentially

Defendant does not directly object to the use of the letter, but it specifically attacks the use of evidence of other defects which are not related to the functioning of the mechanism which allegedly played a part in the accident. These defects, including the number of 1964 Thunderbird vehicles involved with each, as epitomized in plaintiff's designation of items, and with designation of the corrective action taken, are as follows:

113—"Pressure cap causing fuel leaks through carburetor." [Changed the pressure type cap.]

1211—"Wrong hood lock dowel installed at Wixom assembly plant, resulting in the possibility of premature hood pop-up." [Substituted longer dowel pin.]

2800—"Retractable-type seat belts not installed." [Substituted deluxe for standard seat belts.]

3058—"Parking brake release when door slammed (Wixom plant)." [New revised parking brake assembly installed.]

166—"Inadequate calibration of low fuel warning relay." [Revised circuit and installed new relay.]

3100—"Air-conditioning condensation leaks in passenger compartment." [Added additional sealer.]

5600—"Potential damage to fuel & brake line from drilling. (Wixom plant)." [Inspected and corrected.]

25000—"Incorrect stoplamp switch installed which would have resulted in premature failure of the switches (Wixom plant)." [Inspected and replaced with proper switch.]

300—"Possibility of disengagement of parking brake when transmission selector moved, due to incorrect installation of parking brake release connections." [Inspected and corrected.]

85858—"Inadequate wiring circuit protection of stoplamp switch." [Replaced switch and revised wiring.]

Reference to the full text concerning each item fails to reveal how the defect involved could have contributed to the accident. The reference

---

on about 15,000 parts. Each of these parts is in turn the product of its own separate production complex. The total system involves many basic industries, numerous technologies, and hundreds of manufacturing processes.

"The possibilities for error in any of these processes, ranging from engineering through manufacturing and assembly, are so great as to make it inevitable that some defects will escape the most elaborate testing and inspection procedures. Some defects—for example, metallurgical imperfections—may become apparent only after prolonged use."

to release of the parking brake is of no consequence because the uncontradicted evidence demonstrates that the car could not have and did not roll, but was propelled backward.

In *Elmore* v. *American Motors Corp.* (1969) 70 Cal.2d 578 [75 Cal. Rptr. 652, 451 P.2d 84], the court collated the following rules: " 'A manufacturer is strictly liable in tort when an article he places on the market, knowing that it is to be used without inspection for defects, proves to have a defect that causes injury to a human being.' (*Greenman* v. *Yuba Power Products, Inc.*, 59 Cal.2d 57, 62 . . .; *Vandermark* v. *Ford Motor Co.*, 61 Cal.2d 256, 260-261 . . .) Similarly, a retailer engaged in the business of distributing automobiles to the public is strictly liable in tort for personal injuries caused by defects in cars sold by it. (*Vandermark* v. *Ford Motor Co., supra*, 61 Cal.2d 256, 263.) In the last-cited case, it was recognized that a plaintiff is entitled to establish the existence of the defect and the defendants' responsibility for it by circumstantial evidence. (61 Cal.2d at p. 260.) No reason appears why the same rule should not apply where the plaintiff is seeking to prove that the defect caused his injuries." (70 Cal.2d at pp. 583-584. See, in addition to the cases cited, *Gherna* v. *Ford Motor Co.* (1966) 246 Cal.App.2d 639, 650 [55 Cal.Rptr. 94].)

The general rules of relevancy have been codified as follows: "No evidence is admissible except relevant evidence" (Evid. Code, § 350); "Except as otherwise provided by statute, all relevant evidence is admissible" (*id.*, § 351); and " 'Relevant evidence' means evidence, including evidence relevant to the credibility of a witness or hearsay declarant, having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (*Id.*, § 210. See Witkin, *op.cit.*, §§ 301-304, pp. 205-208.)

The defendant relies upon the principles which generally exclude evidence of another crime or civil wrong (Witkin, *op.cit.*, §§ 350-353, pp. 309-313), evidence of subsequent precautions or repairs (*id.*, § 385, pp. 343-344), and even relevant evidence if it involves undue prejudice. (Evid. Code, § 352; and Witkin, *op.cit.*, § 373, pp. 331-332.)

The exclusionary principle is found in the sections of the Evidence Code dealing with evidence of character, habit or custom. (Evid. Code, § 1100-1105.) Section 1100 provides:

"Except as otherwise provided by statute, any otherwise admissible evidence (including evidence in the form of an opinion, evidence of reputation, and evidence of specific instances of such person's conduct) is admissible to prove a person's character or a trait of his character." Nevertheless, subdivision (a) of section 1101 contains the following

proscription: "(a) Except as provided in this section and in Sections 1102 and 1103, evidence of a person's character or a trait of his character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his conduct) is inadmissible when offered to prove his conduct on a specified occasion."[3] ■ The evidence of disrelated defects in the manufacturing process was inadmissible on the issue of determining whether the manufacturer in fact used defective materials in the transmission selector mechanism, or in fact omitted a vital part of that mechanism. (See *North Alaska, etc. Co.* v. *Hobbs, Wall & Co.* (1911) 159 Cal. 380, 390-391 [113 P. 870, 120 P. 27]; *Cosgrove* v. *Pitman* (1894) 103 Cal. 268, 273 [37 P. 232]; and *Towle* v. *Pacific Improv. Co.* (1893) 98 Cal. 342, 343-344 [33 P. 207].)

■ Evidence may be inadmissible for one purpose but admissible for another. (See *Daggett* v. *Atchison, T. & S. F. Ry. Co.* (1957) 48 Cal.2d 655, 665 [313 P.2d 557]; *Hatfield* v. *Levy Brothers* (1941) 18 Cal.2d 798, 809-810 [117 P.2d 841]; *Inyo Chemical Co.* v. *City of Los Angeles* (1936) 5 Cal.2d 525, 543-549 [55 P.2d 850]; *Wagner* v. *Atchison etc. Ry. Co.* (1930) 210 Cal. 526, 531 [292 P. 645]; *Adkins* v. *Brett* (1920) 184 Cal. 252, 256 [193 P. 251]; *Hilts* v. *County of Solano* (1968) 265 Cal.App.2d 161, 169 [71 Cal.Rptr. 275]; but cf. *Trafton* v. *Youngblood* (1968) 69 Cal.2d 17, 32 [69 Cal.Rptr. 568, 442 P.2d 648].) Section 1101 recognizes this principle in subdivisions (b) and (c) which respectively provide: "(b) Nothing in this section prohibits the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident) other than his disposition to commit such acts. [¶] (c) Nothing in this section affects the admissibility of evidence offered to support or attack the credibility of a witness." .

■ The evidence of other defects was not admissible to show that the manufacturer had knowledge or notice of the particular defect upon which the plaintiff founded his claim. (Cf. *Hilts* v. *County of Solano, supra,* 265 Cal.App.2d 161, 168.)

---

[3] "'Person' includes a natural person, firm, association, organization, partnership, business trust, corporation, or public entity." (Evid. Code, § 175.) Sections 1102 and 1103 embrace the rules relating to evidence of character of a criminal defendant to prove conduct, and to evidence of character of the victim of a crime to prove conduct, respectively. Note, also, section 1104 which provides: "Except as provided in Sections 1102 and 1103, evidence of a trait of a person's character with respect to care or skill is inadmissible to prove the quality of his conduct on a specified occasion"; and compare section 1105 which reads, "Any otherwise admissible evidence of habit or custom is admissible to prove conduct on a specified occasion in conformity with the habit or custom."

Insofar as the proffered evidence contained relevant admissions against interest, such were incorporated in the president's letter which has been referred to above. ▮ The fact that some of the 10 specific defects involved omissions of parts or the insertion of improper parts at the plant where the car operated by plaintiff was assembled, could not, under the principles noted above, render proof of such fact admissible to establish the omission of a part in the transmission selector mechanism.

The plaintiff insists that proof of existence of, or rather proof of the admission of the existence of the 10 defects was admissible to impeach the defendant's answers to interrogatories which are set forth in the margin.[4] (See *Daggett* v. *Atchison, T. & S. F. Ry. Co., supra,* 48 Cal.2d 655, 665; *Hatfield* v. *Levy Brothers, supra,* 18 Cal.2d 798, 809-810; *Inyo Chemical Co.* v. *City of Los Angeles, supra,* 5 Cal.2d 525, 543-544; and *Wagner* v. *Atchison etc. Ry. Co., supra,* 210 Cal. 526, 529-531.) The "mechanism" referred to in the last question was "the transmission selector lever indicator system and mechanism." There is nothing in the record of the congressional inquiry to impeach the negative answer given to that question. The first two questions are more general in scope. The propriety of reading any of the interrogatories to the jury was reviewed by the court and counsel out of the presence of the jurors. The defendant's objection to interrogatories numbers 27 and 29 was overruled with the court's comment, "Both of those concern awareness of defect." If when read in context "defect" refers to the selector lever mechanism referred to in plaintiff's complaint, the ruling of the court on the reading of the interrogatories was correct, but the alleged impeaching evidence was not then impeaching. On the other hand, if "defect" is literally interpreted to mean any defect in the car, the question and answer were inadmissible for the reasons reviewed above. There was, therefore, properly no statement to be impeached.

▮ A witness may be impeached by "A statement made by him that is inconsistent with any part of his testimony at the hearing." (Evid. Code, § 780, subd. (h).) The Law Revision Commission observed that the effect

---

[4] "No. 27: 'Were you aware of any defect in the 1964 Ford Thunderbird automobiles and/or in particular the one involved in this action at the time it was manufactured, sold or delivered to plaintiff?' The answer dated November 29, 1966 is 'No.' "

"No. 29: 'Did you become aware of any defect between the time the automobile was sold and delivered to plaintiff and his firm and the time plaintiff was injured?' The answer is dated again November 29, 1966. The answer is 'No'."

"No. 129: 'Following the commencement of use of the mechanism, did the defendant, or any of its representatives, receive or obtain knowledge or information with respect to the conditions under which the mechanism was used, which were detrimental to its durability, function, or structure?' The answer in November 1966 is 'No'."

of section 780, together with section 351, is to eliminate the so-called " 'collateral matter' limitation on attacking the credibility of a witness" (§ 780, Comment). This comment does not mean, however, that a party has a license to secure the admission of otherwise inadmissible evidence for the purpose of subsequently impeaching it.

■ Since there was no proper ground for admitting the evidence of other defects, the defendant did not lose its right to attack its admission by failing to request a limiting instruction. (Cf. *Daggett* v. *Atchison, T. & S. F. Ry. Co., supra,* 48 Cal.2d 655, 665-666; *Hatfield* v. *Levy Brothers, supra,* 18 Cal.2d 798, 810; *Inyo Chemical Co.* v. *City of Los Angeles, supra,* 5 Cal.2d 525, 544; and see *Adkins* v. *Brett, supra,* 184 Cal. 252, 259-261.)

Even if the evidence of other disrelated defects be considered relevant, it should have been excluded under the principles set forth in section 352 of the Evidence Code which provides: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

In *Love v. Wolf, supra,* the court observed, "While the transcript excerpts [of the congressional hearing] did contain statements by an officer of Parke-Davis, who was a witness before the committee, which could be deemed statements against interest, actually the excerpts introduced were predominantly critical and caustic comments by the late Senator Kefauver regarding the practices of Parke-Davis in marketing chloromycetin. Admitted in evidence in this case, they were self-serving to plaintiff and tantamount to producing another advocate to argue plaintiff's case. Mr. Boccardo needed no such assistance. Any competent portions of the transcript would have been confusing and meaningless without the inadmissible matter. The transcript on retrial should be rejected.

" '. . . [R]elevance is not always enough. There may remain the question, is its value worth what it costs? There are several counterbalancing factors which may move the court to exclude relevant circumstantial evidence if they outweigh its probative value. In order of their importance, they are these. First, the danger that the facts offered may unduly arouse the jury's emotions of prejudice, hostility or sympathy . . .' (McCormick, Evidence, p. 319.)" (226 Cal.App.2d at pp. 403-404.) ■ The issue in this case was not the general character of the defendant's manufacturing process, but, as set forth in the pretrial conference order, the question of the existence of any defects in the manufacture or design of the transmission selector lever mechanism. The evidence admitted created a substantial

danger of undue prejudice, of confusing the issues, and of misleading the jury.

It is concluded that the evidence of the 10 disrelated defects was improperly admitted. The question remains as to whether this error in fact prejudiced the defendant. "We must determine whether such error is prejudicial so as to compel a reversal and to that end decide in the light of the entire record whether in our opinion 'it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.' (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 . . .; see Cal. Const., art. VI, § 13; Code Civ. Proc., § 475.)" (*Continental Baking Co.* v. *Katz* (1968) 68 Cal.2d 512, 527 [67 Cal.Rptr. 761, 439 P.2d 889]. See also Evid. Code, § 353;[5] *Conderback, Inc.* v. *Standard Oil Co.* (1966) 239 Cal.App.2d 664, 684 [48 Cal.Rptr. 901]; and *Hatfield* v. *Levy Brothers, supra,* 18 Cal.2d 798, 815.)

Plaintiff's argument that it is difficult to conceive how the information read to the jury could be prejudicial in view of the widespread dissemination of information of government investigations through all forms of news media must be rejected. Jurors are not expected to leave all of their common sense or common experience and knowledge behind them when they enter the jury box. ▮ Nevertheless, one party to a law suit is not entitled to have those matters of public knowledge which may tend to favor his case formally placed in the scales of justice with other evidence unless there is some particular materiality or relevance.

Defendant, for its part, asserts that since there was a conflict in the evidence as to whether the material in the mechanism was defective, and as to whether a part was omitted, the erroneously received evidence must be deemed prejudicial. In *Hatfield* v. *Levy Brothers, supra,* the court observed, "Defendants urge in respect to its claim of prejudicial error that because the case is a close one, errors which ordinarily might not be prejudicial became so under such circumstances. That may be true, but the case is not necessarily a close one. The greater number of witnesses or quantity of evidence on one side does not mean that a case is close; nor does a sharp conflict in the evidence make it so. If it did, prac-

[5]Evidence Code section 353 provides: "A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous admission of evidence unless:

"(a) There appears of record an objection to or a motion to exclude or to strike the evidence that was timely made and so stated as to make clear the specific ground of the objection or motion; and

"(b) The court which passes upon the effect of the error or errors is of the opinion that the admitted evidence should have been excluded on the ground stated and that the error or errors complained of resulted in a miscarriage of justice."

tically every vigorously contested case would be a close one." (18 Cal.2d at p. 815.)

■ There are several factors in this case which lead to the conclusion that the admission of the evidence of the 10 unrelated defects did not result in a miscarriage of justice. The proof offered in the case focused as a whole on the alleged defects in the transmission selector lever mechanism itself. The very irrelevance of the other defects tended to lessen their persuasive power. Moreover, the fact that these defects were discovered and corrected tended to indicate that if there had been a defect in the transmission selector lever mechanism it would have been discovered also.

Moreover, there is ample evidence to support the verdict. The parts involved were the lever itself, the detent or pawl, designated as the transmission control selector position insert, which was moved by the lever, the socket into which the insert fitted, and the springs which applied tension to the mechanism. There was little or no evidence to contradict that produced by plaintiff to show that the lever had suffered unwarranted wear, and that one of two springs had been omitted from the mechanism. Conflicting evidence was offered as to the existence of extraordinary wear on the insert and socket. There was a conflict as to the extent that any such defects could contribute to a slippage of the lever from park to reverse position. The jurors had the parts in question before them, and, as well, replacement parts with which they could be compared. The jurors were unanimous on the issue of liability. The evidence attacked could have been of weight on, but was superficially cumulative on the issue of the existence of the defects. It is inconceivable that it influenced the jurors' conclusions from the conflicting testimony as to whether the defects could have permitted the slippage to which the accident was attributed.

Defendant appears to assume, as it did in connection with its motions for judgment notwithstanding the verdict and for a new trial, that the sole issue was whether or not the selector mechanism, when all the way into the park position, could come from park to the reverse position without outside intervention; and that the only credible evidence was to the effect that such slippage was impossible. The plaintiff's expert testified to the contrary.[6]

---

[6]His opinion reads: "Because of the fact that the shift lever tongue was gouged severely and abraded severely and in the specific manner, in the specific manner it was gouged, sloping as can be seen, and because of the specific assembly between the shift lever and the socket, and because of the existence of one spring, and because of the very slight yet existing wear on the teeth of the pawl, all of which elements have created a condition of excessive tolerances, looseness in the relationship between these parts—there was no longer the snugness effect—and the gouging is sloped and it is to the degree it is where the gouging depth at the surface of that

Moreover, defendant's approach overlooks the weight of the testimony which indicates, and is consistent with that offered by the defendant, that the excessive wear on the lever itself created a slackness which not only destroyed the efficient workings of electrical circuits which controlled the starter when in the park position, but also permitted the indicator to show that the lever was in that position, when in fact it was within the narrow range between the two positions, from which it could admittedly slip into reverse.

On the hearing on the defendant's post verdict motions the court acknowledged that the jury had requested the book containing the government report during their deliberations, and that through the bailiff the jurors were instructed that they could not have the book, but that a request to read the excerpts read at the trial would be honored. No such request was forthcoming. It is impossible on that record to determine whether the jurors were really concerned with what had been read at the trial, or whether, as suggested by plaintiff, they wished to check the book out of curiosity concerning reports with reference to their individual automobiles.

In the light of the entire record the error in the admission of evidence of disrelated defects did not result in a miscarriage of justice. (Cal. Const., art. VI, § 13; Evid. Code, § 353.)

*Costs*

By appropriate motion defendant sought to strike from the plaintiff's cost bill sums claimed for the travel expenses of plaintiff's attorneys in connection with depositions. At the hearing it was stipulated that a sum of $68 had been included in the cost bill for travel expenses and parking fees incurred in attending from Santa Rosa, where the case was pending, five depositions in San Francisco, four of which were taken by stipulation, and one by notice given by the defendant.

In *Hoge* v. *Lava Cap Gold Mining Corp.* (1942) 55 Cal.App.2d 176 [130 P.2d 470], the court ruled, "We are not in accord with appellant's contention that as a matter of law the statute does not authorize the allowance of traveling expenses as costs. The cost incurred in the taking of a deposition is a proper disbursement. [Citation.] The mode of its taking, either by written or oral interrogation, is subject to the direction of the trial court. [Citation.] If the deposition is taken by oral interrogatories it is generally necessary that someone appear. The statute specifically provides for travel-

---

tongue is equal and indeed slightly exceeding the entire depth of the first tooth which is supposed to hold it, all of these—it is my considered judgment that all of these elements make it possible for that shift lever to slip out of its position when the engine is running and the attendant unavoidable vibration of the automobile."

ing expenses, after proper notice given, upon a failure to take a deposition, except for certain designated reasons. (Code Civ. Proc., § 2025½.) If traveling expenses may be allowed when the deposition is not taken, we conclude that such an expense may be a necessary disbursement when the deposition is taken. The Legislature could not have reasonably approved the provision found in section 2025½ except upon the assumption that a deposition actually taken in compliance with the code provisions was, subject to the discretion of the court in fixing the amount, chargeable as a necessary disbursement." (55 Cal.App.2d at pp. 187-188. See also *People* ex rel. *Mosk* v. *Barenfeld* (1962) 203 Cal.App.2d 166, 183-185 [21 Cal. Rptr. 501].)

The necessity for incurring those expenses was a matter properly within the discretion of the trial court. (*Puppo* v. *Larosa* (1924) 194 Cal. 721, 723 [230 P. 440]; *People* ex rel. *Mosk* v. *Barenfeld, supra,* at p. 185; *Hoge* v. *Lava Cap Gold Mining Co., supra,* 55 Cal.App.2d 176, 177; *Murphy* v. *F. D. Cornell Co.* (1930) 110 Cal.App. 452, 454-455 [294 P. 490].) The travel expenses which were disallowed in *Sime* v. *Hunter* (1921) 55 Cal.App. 157 [202 P. 967] were the expenses incurred by the attorney in attending a hearing to argue an appeal. The court found that these were the attorney's personal expenses. (55 Cal.App. at p. 159.) There, unlike *Hoge* and this case, there was no legislative indication that traveling expenses should be considered.

There was no abuse of discretion in failing to strike the contested costs.

The judgment and orders appealed from are affirmed.

Molinari, P. J., and Elkington, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 24, 1970.