TAMURA, Acting P. J.
I concur with the majority’s disposition of the case and with its analysis of the issues except in one important respect. I am constrained to disagree with its treatment of the only important legal issue in the case of precedential value: The admissibility of evidence of the defect in another component of the steering mechanism of the vehicle. The evidence was received, not to show there was a defect in the *863 part claimed to have caused the accident, but to show that Ford negligently discharged its duty to inspect for defects. The majority holds that admission of the evidence for the purpose for which it was offered and received constituted error. I disagree.
As part of their case in chief, plaintiffs called defendant’s expert and reviewed through him the inspection and testing procedures employed by Ford to detect defects in the power steering pump bracket. Ford’s engineer testified that other than a visual check by the assembly line worker for significant misalignment and a functional test by running the car for approximately 15 minutes, no specific check was made to determine whether the power steering pump pulley was properly aligned. He explained that Ford relied upon what he termed the “dimension-arrived-at” theory which in substance means that if all of the parts have been manufactured to Ford’s specifications and are properly assembled, the end product would be free of defects. The engineer testified that the “dimension-arrived-at” theory and its assumptions applied to “the vast majority of the assembly things that Ford does at their plant.” Failure to discover the defect in the Pitman arm-sector shaft assembly thus had some probative value on the issue of whether the “dimension-arrived-at” assumption augmented by visual inspection as the product went down the assembly line satisfied the manufacturer’s duty to inspect for defective condition of its product.[1]
The majority holds that the evidence had no probative value because Ford relied in part on the functional test to uncover any misalignment of the power steering pump pulley but not with respect to any defect in the Pitman arm-sector shaft assembly. However, the only evidence respecting Ford’s inspection for defects in the latter component was the following testimony by its engineer: “Well, that is a different matter. Now, we are back at the—the steering gear is assembled, put on back at the head of the chassis line, that is inspected, that is visually inspected by the—when it comes down the chassis line.”
*864 The vague testimony by Ford’s engineer does not show that a wholly different inspection procedure was used for the Pitman arm-sector shaft assembly; fundamentally, the technique was the same. The witness testified that the power steering pump bracket was also visually inspected for significant defects by the assembly line worker and more importantly, that Ford relies upon the “dimension-arrived-at” theory in the “vast majority of the assembly things that Ford does at their plant.” On their negligence cause of action, plaintiffs had the burden of proving that Ford was negligent in failing to uncover the defect in the power steering pump bracket and the questioned evidence was being introduced on that cause of action as part of plaintiffs’ case in chief. Evidence that visual inspection on the assembly line and reliance upon the “dimension-arrived-at” theory failed to uncover the defect in the Pitman arm-sector shaft assembly was thus relevant to show that Ford’s method of inspecting and checking for defects was inadequate. Although there was evidence that the functional test (running the car for 15 minutes) was used as an additional safeguard against misalignment in the power steering pump pulley, there was evidence that while running the car for 15 minutes would uncover significant misalignment, a misalignment of a lesser degree would not be revealed in that brief testing period. The evidence is clear that Ford relied primarily on the “dimension-arrived-at” theory and visual inspection on the assembly line to uncover defects. The evidence in question was, therefore, relevant.
“Except as otherwise provided by statute, all relevant evidence is admissible.” (Evid. Code, § 351.) The general test for relevancy is whether the evidence tends logically, naturally, and by reasonable inference to establish the fact in issue. (People v. Jones, 42 Cal.2d 219, 222 [266 P.2d 38]; People v. Warner, 270 Cal.App.2d 900, 907 [76 Cal.Rptr. 160].) Since relevancy depends on the nature of the particular issue involved and the facts and circumstances of each case, wide discretion must be vested in the trial judge in determining whether the evidence should be received. (Spolter v. Four-Wheel Brake Serv. Co., 99 Cal.App.2d 690, 699 [222 P.2d 307].)
In the case at bench, Ford’s counsel virtually conceded relevancy of the questioned evidence but argued that the court should exercise its discretion under Evidence Code section 352 and exclude the evidence because of its prejudicial effect. Ford’s counsel stated: “I think it is *865 discretionary with the Court, at this point, and whether the prejudicial aspects of it would outweigh any beneficial aspects of it, I think in this case where they are saying this would definitely cause an accident in the future, is what he seems to be saying, is completely prejudicial to our side of the case.” The judge ultimately overruled defendant’s objection stating: “I think it is somewhat remote but it does tend to show the inspection and lack of inspection on the steering system.” In my opinion the court’s ruling did not constitute an abuse of discretion.
Marocco v. Ford Motor Co., 7 Cal.App.3d 84 [86 Cal.Rptr. 526], relied upon by Ford and cited by the majority is not controlling. The issue there was whether Ford Motor Company’s report to a congressional committee listing corrective actions taken by the company over a span of years to remedy various defects in automobiles manufactured by it was admissible. The trial court permitted plaintiff to introduce that portion of the report which listed 10 corrective actions taken by Ford with respect to the particular year model of the vehicle involved in the action. None of those corrections involved the claimed defect in the transmission selector mechanism which was the basis of plaintiff’s lawsuit. The reviewing court held that the evidence pertaining to other defects was inadmissible to prove a defect in the transmission selector system or to prove that the manufacturer had knowledge or notice of the claimed defect. Here, unlike Marocco, the defect pertained not only to the specific vehicle involved in the lawsuit but concerned a component of the steering mechanism. More importantly, the evidence was offered, not to prove that the power steering pump bracket was defective, but to show that Ford negligently performed its duty to inspect for defects.
A petition for a rehearing was denied August 3, 1977, and appellant’s petition for a hearing by the Supreme Court was denied October 20, 1977.

The law is well settled that when an article is such that it is reasonably certain that if it is negligently manufactured or designed it will place life or limb in peril the manufacturer is chargeable with negligence if the defective condition could have been disclosed by reasonable inspection and tests and such inspection and tests are not made. (Pike v. Frank G. Hough Co., 2 Cal.3d 465,470 [85 Cal.Rptr. 629, 467 P.2d 229]; Sheward v. Virtue, 20 Cal.2d 410, 414 [126 P.2d 345]; Putensen v. Clav Adams, Inc., 12 Cal.App.3d 1062, 1078 [91 Cal.Rptr. 319]; Rest.2d Torts, § 395.)